

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-5-2006

# Garcia v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 05-2786

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Garcia v. Atty Gen USA" (2006). *2006 Decisions.* Paper 401.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/401

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-2786

———

BELITO GARCIA,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

———

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A25 303 663)
Immigration Judge Donald Vincent Ferlise

———

Argued June 15, 2006
Before:  FISHER, CHAGARES
and REAVLEY,[*] *Circuit Judges*.

———

[*]The Honorable Thomas M. Reavley, United States
Circuit Judge for the Fifth Circuit, sitting by designation.

(Filed September 5, 2006)

Steven A. Morley
Thomas M. Griffin (Argued)
Morley, Surin & Griffin
325 Chestnut Street, Suite 1305-P
Philadelphia, PA  19106
       *Attorneys for Petitioner*

Kathleen Meriwether (Argued)
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA  19106
       *Attorney for Respondent*

―――――

## OPINION OF THE COURT

―――――

FISHER, *Circuit Judge*.

Belito Garcia petitions for review from the Board of Immigrations Appeals' final order of removal. Garcia's petition requires us to determine whether his conviction under section 13(a)(30) of the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act ("the Act"), 35 Pa. Stat. Ann. § 780-113(a)(30), constitutes an "aggravated felony" under relevant provisions of the Immigration and Nationality Act ("INA").

We have previously held that violations of similar Delaware and New Jersey statutes do not qualify as aggravated felonies. *See Gerbier v. Holmes*, 280 F.3d 297 (3d Cir. 2002); *Wilson v. Ashcroft*, 350 F.3d 377 (3d Cir. 2003). For the reasons that follow, we conclude that the Pennsylvania Act is distinguishable from both the Delaware and New Jersey statutes, and that Garcia's conviction qualifies as an aggravated felony. We will therefore deny his petition for review.

## I.

Garcia, a resident alien, was arrested in Philadelphia in April 1996. According to the criminal complaint, which is part of the administrative record, Garcia sold an amount of marijuana to an undercover police officer, and later, on the same date, possessed an amount of marijuana with the intent to deliver. On September 26, 1996, Garcia pled *nolo contendere*[1] before the Philadelphia Municipal Court to two counts of manufacturing, delivering, or possessing with the intent to deliver a controlled substance, in violation of section 13(a)(30) of the Act, 35 Pa. Stat. Ann. § 780-113(a)(30), and two counts of knowingly possessing a controlled substance, in violation of section 13(a)(16) of the Act, 35 Pa. Stat. Ann. § 780-113(a)(16).

---

[1]A plea of *nolo contendere* is a conviction for immigration purposes. *Acosta v. Ashcroft*, 341 F.3d 218 (3d Cir. 2003).

On December 11, 1996, the Immigration and Naturalization Service ("INS")[2] issued an order to show cause, advising Garcia that he was removable from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), based on his conviction of an "aggravated felony."[3] An Immigration Judge ("IJ") subsequently found that Garcia's conviction qualified as an aggravated felony, and that, as a result, he was deemed to have committed a "particularly serious crime." Based on that finding, the IJ denied Garcia's application for asylum and withholding of removal, and ordered him removed from the United States. Garcia appealed the IJ's order to the Board of Immigration Appeals ("BIA").

In a decision dated October 28, 1999, the BIA held that Garcia's aggravated felony conviction created a rebuttable presumption that he had committed a "particularly serious

---

[2]On March 1, 2003, the INS ceased to exist and its functions were transferred to the newly formed Bureau of Immigration and Customs Enforcement, within the United States Department of Homeland Security. *See Knapik v. Ashcroft*, 384 F.3d 84, 86 n.2 (3d Cir. 2004) (citing Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 451, 471, 116 Stat. 2135).

[3]The order to show cause also charged Garcia with being removable based upon his conviction for violating a law relating to a controlled substance. *See* 8 U.S.C. § 1227(a)(2)(B)(i). The IJ found Garcia removable based on this section, but that finding is not challenged in Garcia's petition for review, which only concerns whether Garcia has been convicted of an aggravated felony.

crime," so as to render him ineligible for asylum and withholding of removal under relevant provisions of the INA. The BIA remanded the case for further proceedings as to whether Garcia could "overcome the presumption that he had been convicted of a particularly serious crime," because the IJ incorrectly believed that he did not have the discretion to hold that the aggravated felony was not a particularly serious crime.

In an oral decision dated July 25, 2001, the IJ again held that Garcia was removable based on his conviction of an aggravated felony.[4] The IJ also determined that Garcia had failed to overcome the rebuttable presumption that his conviction was for a particularly serious crime. Thus, the IJ

---

[4]The IJ issued his decision after conducting two additional hearings. At the first, the IJ questioned Garcia regarding the nature of his offense. During this questioning, Garcia purportedly admitted that his conviction was for an aggravated felony. However, the IJ, noting Garcia's status as a layman and the technical nature of the term "aggravated felony," expressly found that Garcia had denied that his conviction was for an aggravated felony. The IJ instead determined, as a matter of law, that the conviction qualified as an aggravated felony. At the second hearing, the IJ heard testimony regarding whether Garcia's conviction was for a particularly serious crime and whether Garcia was entitled to deferral of removal under the United Nations Convention Against Torture ("CAT").

held that Garcia was ineligible for asylum and withholding of removal.[5]

The BIA affirmed on March 12, 2003. In response to Garcia's argument that his conviction was not for an aggravated felony, the BIA first noted that it had found Garcia's conviction to be an aggravated felony in its decision dated October 28, 1999. The BIA added that the conviction records established the specific provision of Pennsylvania law under which Garcia was convicted, and supported a finding that he was convicted of an aggravated felony.[6] The BIA also affirmed on other matters not relevant to the current petition for review.

On August 11, 2004, Garcia filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania, seeking a determination that his Pennsylvania drug conviction was not an aggravated felony, and

---

[5]The IJ also denied Garcia's petition for deferral of removal under the CAT on factual grounds.

[6]In addition, the BIA noted that "at the remanded hearing, [Garcia] admitted that he was convicted of an aggravated felony, [ ] and his attorney, at the second hearing, did not contest this issue." However, the legal classification of prior convictions is not a factual proposition susceptible of admission by a litigant. It is a legal proposition that must be determined by a court in accordance with legal authority. *See Gov't Employees Ins. Co. v. Benton*, 859 F.2d 1147, 1153 n.11 (3d Cir. 1988) (date of issue of insurance policy was a legal question which could not be admitted by the parties).

6

requesting that his case be remanded for further consideration of his withholding of removal, cancellation of removal, asylum, and CAT claims. The District Court then transferred the habeas petition to this Court pursuant to section 106(c) of the REAL ID Act. *See Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005) (noting that, pursuant to section 106(c), "all habeas petitions brought by aliens that were pending in the district courts on the date the REAL ID Act became effective (May 11, 2005) are to be converted to petitions for review and transferred to the appropriate court of appeals").

We have jurisdiction over Garcia's petition for review pursuant to 8 U.S.C. § 1252(a)(2)(D). *See Ng v. Att'y Gen.*, 436 F.3d 392, 394 (3d Cir. 2006) (stating that our jurisdiction extends to "questions of law raised upon a petition for review," including petitions for review of removal orders based on aggravated felony convictions). We exercise plenary review over Garcia's legal argument that he was not convicted of an aggravated felony and his constitutional argument that the IJ and BIA deprived him of due process of law. *See Tran v. Gonzales*, 414 F.3d 464, 467 (3d Cir. 2005).

## II.

An alien who has been convicted of an aggravated felony is ineligible for most types of relief provided by the INA, such as cancellation of removal, *see* 8 U.S.C. § 1229(a)(3), asylum, *see id.* § 1158(b)(2)(A)(ii), (b)(2)(B)(i), and withholding of

7

removal, *see id.* § 1231(b)(3)(B)(ii), (iv); 8 C.F.R. § 208.16.[7] In addition, a finding that an alien has committed an aggravated felony also limits our review to constitutional and legal questions. 8 U.S.C. § 1252(a)(2)(C), (D).

For purposes of drug-related offenses, an "aggravated felony" means "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." *Id.* § 1101(a)(43)(B). The question in this case is whether Garcia's conviction qualifies as an aggravated felony under this provision.

We set forth the framework for making this determination in *Gerbier v. Holmes*, 280 F.3d 297 (3d Cir. 2002). In *Gerbier*, we adopted the BIA's two-route approach, pursuant to which a state drug conviction may qualify as an aggravated felony under either of two distinct routes. *Id.* at 313. Under the first, known as the "illicit trafficking" route, a felony state drug conviction is an aggravated felony if it contains a "trafficking element." *Id.* Under the second, the "hypothetical federal felony" route, a state drug conviction, regardless of its classification, is an aggravated

---

[7]Under the provisions relating to asylum and withholding of removal, the alien is only ineligible for relief upon a secondary finding that the aggravated felony constitutes a "particularly serious crime." Garcia does not challenge the IJ's determination that he was convicted of a particularly serious crime, but rather only the underlying finding that his conviction was for an aggravated felony.

8

felony if it would be punishable as a felony under the Federal Controlled Substances Act. *Id.* at 299.

In applying the *Gerbier* approach, and in making aggravated felony determinations in general, we presumptively apply the "formal categorical approach." *Singh v. Ashcroft*, 383 F.3d 144, 147 (3d Cir. 2004) (citing *Taylor v. United States*, 495 U.S. 575 (1990)). Under the categorical approach, we "'must look only to the statutory definitions of the prior offenses,' and may not 'consider other evidence concerning the defendant's prior crimes,' including, 'the particular facts underlying [a] conviction[ ].'" *Id.* at 147-48 (quoting *Taylor*, 495 U.S. at 600).

Certain circumstances, however, permit a departure from the formal categorical approach. *See id.* at 148. In *Singh*, we engaged in a detailed analysis of when such departure is appropriate. In our analysis, we noted that aggravated felony determinations always involve consideration of two statutes: the federal statute enumerating particular categories of offenses that constitute aggravated felonies (the "enumerating statute"), and the criminal statute of conviction (the "statute of conviction"). *Id.* at 161.

In certain circumstances, the enumerating statute itself invites inquiry into the facts underlying the conviction at issue. *Id.* The majority of provisions, however, involve relatively unitary concepts, like forgery, burglary, and "crime of violence," and therefore do not invite inquiry into the underlying facts. *Id.* at 161. For example, we have noted that "illicit trafficking in a controlled substance" is similar to "crime of

9

violence" in that neither phrase invites departure from the categorical approach. *Id.* at 156 n.4.

The language of the statute of conviction may also invite departure from the formal categorical approach. *Id.* at 162. Statutes phrased in the disjunctive may invite inquiry into the record of conviction if it is unclear from the face of the statute whether the conviction qualifies as an aggravated felony. *See id.* Thus, "[w]here some variations meet the aggravated-felony requisites and others do not, we have . . . allowed further inquiry to see which variation was actually committed." *Id.*

Based on these observations, we concluded that "[w]hile the formal categorical approach of *Taylor* presumptively applies in assessing whether an alien has been convicted of an aggravated felony, in some cases the language of the particular subsection of 8 U.S.C. § 1101(a)(43) at issue will invite inquiry into the underlying facts of the case, and in some cases the disjunctive phrasing of the statute of conviction will similarly invite inquiry into the specifics of the conviction." *Id.* at 148.

## III.

Having discussed the relevant legal standards for determining whether a conviction is for an aggravated felony, we now turn to Garcia's offense. Section 13(a)(30) of the Pennsylvania Act provides as follows:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

10

. . . .

> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 Pa. Stat. Ann. § 780-113(a)(30).

As an initial matter, we address Garcia's argument that it is improper to consider the complaint issued in his Pennsylvania criminal proceeding in determining whether the statute of conviction permits departure from the formal categorical approach under *Singh*. We disagree. In Pennsylvania, a criminal complaint is not merely a police report. It is the charging instrument, and in this case bears the imprimatur of the district attorney. The filing of a criminal complaint is sufficient to initiate criminal proceedings in the Commonwealth and Pennsylvania law does not require the subsequent filing of either an information or an indictment if a plea of guilty or nolo contendere is entered. *See* Pa. R. Crim. P. 502; *Commonwealth v. Mitchell*, 372 A.2d 826, 829 (Pa. 1977) (stating that criminal proceedings begin with presentation of the complaint to the court). Since the record of conviction includes the charging instrument, *see*, *e.g.*, *Singh*, 383 F.3d at 163, and the criminal complaint in Garcia's case is the relevant charging

11

instrument, we may appropriately examine that complaint if departure from the formal categorical approach is appropriate.

Turning to the merits, we must now determine whether Garcia's conviction pursuant to section 13(a)(30) of the Act is an aggravated felony under either the illicit trafficking route or the hypothetical federal felony route set forth in *Gerbier*. For the reasons that follow, we conclude that Garcia's state drug conviction qualifies as an aggravated felony under the illicit trafficking route.[8]

In order to qualify as an aggravated felony under the illicit trafficking route, a drug conviction must satisfy two requirements: (1) the offense must be a felony under the law of the convicting sovereign, and (2) the offense must contain a "trafficking element." *Gerbier*, 280 F.3d at 313 (citing *In re Davis*, 20 I. & N. Dec. 536 (BIA 1992)). A violation of section 13(a)(30) of the Act is a felony pursuant to 35 Pa. Stat. Ann. § 780-113(f). Therefore, the first requirement of the illicit trafficking route is clearly satisfied.

The more interesting question is whether the state crime contains a "trafficking element." *See Gerbier*, 280 F.3d at 313. In order for a state drug conviction to contain a trafficking element, it must involve "the unlawful trading or dealing of a controlled substance." *Id.* at 305 (citing *Davis*, 20 I. & N. Dec. at 541).

---

[8]We therefore do not need to address the hypothetical federal felony route.

The Pennsylvania statute under which Garcia was convicted is disjunctive, and therefore departure from the formal categorical approach is appropriate.[9] *See Singh*, 383 F.3d at 162. Thus, we may examine the charging instrument to determine whether Garcia's conviction contains a trafficking element. *See id.* at 163. The criminal complaint states: "the defendant unlawfully sold and delivered a controlled substance, to wit, marijuana to an undercover police officer, and at a latter time on the same date the [defendant] possessed an additional 38 packets of marijuana (PNW: 2.0 grams) in a quantity and under circumstances indicating intent to deliver . . . ." (App. at 43.)

---

[9]As we stated in *Singh*, a statute need not be formally divided into separate subsections in order to be considered disjunctive for these purposes. *Singh*, 383 F.3d at 163. Rather, the key is whether the provision is disjunctive in a relevant sense. Here, the Pennsylvania statute describes three distinct offenses: manufacture, delivery, and possession with the intent to deliver or manufacture. Based on the broad scope of section 13(a)(30), it appears that the section may encompass conduct that does not involve trading or dealing. In particular, it is not clear that every violation of the manufacturing provision involves trading or dealing. For example, there may be circumstances in which a defendant simply manufactured drugs for his own personal use. As a result, it is unclear from the face of the statute whether a conviction under the section automatically qualifies as an aggravated felony. Therefore, the statute is disjunctive in a relevant sense and departure from the categorical approach is appropriate under *Singh*. 383 F.3d at 162.

13

Thus, it is clear from the criminal complaint that Garcia pled guilty to delivery and possession with the intent to deliver.

In *Gerbier*, we noted that "distribution, solicitation, [and] possession with intent to distribute" suggest trading or dealing in a controlled substance. 280 F.3d at 313. Since Garcia pled guilty to delivery and possession with the intent to deliver, the Pennsylvania equivalent of distribution and possession with the intent to distribute, his conviction indicates that he was trading or dealing in a controlled substance. *See id.* Moreover, the criminal complaint clearly establishes that Garcia did in fact sell drugs to an undercover officer. For these reasons, we conclude that Garcia's Pennsylvania drug conviction is an aggravated felony under the illicit trafficking route of *Gerbier*.

## IV.

Garcia's Pennsylvania drug conviction is an aggravated felony under the illicit trafficking route as enunciated in *Gerbier*. Accordingly, we will deny the petition for review.[10]

---

[10]Garcia also raises two due process arguments, which are without merit. The first is that the IJ violated Garcia's due process rights by bullying him into admitting that he had been convicted of an aggravated felony. This argument is not supported by the record. The IJ did not badger Garcia into admitting that he had been convicted of an aggravated felony – instead he properly recognized that a layperson cannot fully understand legal terms of art, found that Garcia had denied that he had been convicted of an aggravated felony, and made the determination as a matter of law. Moreover, the Attorney

General does not in any way seek to bind Garcia to his purported admission. Therefore, this argument must fail.

The second due process argument raised by Garcia is that the BIA violated his due process rights by failing to apply relevant law relating to the aggravated felony determination. Although the BIA's discussion of the relevant law was terse, we find no error in it, nor do we find a due process violation. Therefore, this argument must fail as well.

15