FILED
**United States Court of Appeals**
**Tenth Circuit**

**May 15, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

DAVID E. WRIGHT,

      Defendant - Appellant.

No. 13-3189
(D.C. No. 2:12-CR-20154-KHV-1)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

David E. Wright appeals from two concurrent 37-month sentences imposed after he pleaded guilty to assaulting two federal corrections officers. The issue on appeal is whether an earlier Minnesota conviction qualifies as a "controlled substance offense" for purposes of sentencing Mr. Wright as a career offender under U.S.S.G. § 4B1.1. He argues that the district court erred in applying the "modified categorical approach" contemplated in *Taylor v. United States*, 495 U.S. 575, 602 (1990), applied

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

in *Shepard v. United States*, 544 U.S. 13, 26 (2005), and recently discussed in *Descamps v. United States*, 133 S. Ct. 2276, 2283-86 (2013), to conclude that the conviction qualified as a controlled substance offense. In the alternative, he asserts that the district court considered documents it should not have consulted under the modified categorical approach. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and employing de novo review, *see United States v. Karam*, 496 F.3d 1157, 1166 (10th Cir. 2007), we affirm.

### *Overview*

Guideline § 4B1.1 allows enhanced "career offender" sentencing for a defendant with "at least two prior felony convictions of either a crime of violence or a controlled substance offense." A "controlled substance offense" is defined as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b); *see also id.* § 4B1.1 cmt. 1 (stating that "crime of violence" is defined in § 4B1.2). "Although *Taylor* and *Shepard* each addressed the classification of a prior conviction for purposes of the Armed Career Criminal Act, their approach is equally applicable in the context of the career offender sentencing guideline." *Karam*, 496 F.3d at 1166.

In *Taylor*, the Supreme Court held that in determining whether a defendant was eligible for enhanced sentencing under 18 U.S.C. § 924(e), the trial court should

- 2 -

"look only to the fact of conviction and the statutory definition of the prior offense" to determine whether a prior conviction meets the elements of the "generic" crime (there, burglary). 495 U.S. at 598, 602. But although "[t]his categorical approach" was intended to apply in the majority of cases, *Taylor* also posited that the "approach . . . may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary"; for example, where a statute provided that a burglary could be of a building or an automobile, if the jury necessarily had to find an entry of a building to convict, then the conviction could support the sentencing enhancement. *Id.* at 602.

The Court later applied the modified categorical approach in *Shepard*, restricting courts from considering more than a limited array of documents in determining the elements of the offense of conviction:

> [E]nquiry under the [Armed Career Criminal Act] to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.

544 U.S. at 26.

Recently, in *Descamps*, the Court explained that the modified categorical approach "helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a

part in the defendant's conviction." 133 S. Ct. at 2283. But when a statute defines a crime "not alternatively, but only more broadly than the generic offense," the modified categorical approach has "no role to play." *Id.* at 2283, 2285.

> [T]he modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute. The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorical approach's basic method: comparing those elements with the generic offense's. All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates several different crimes.

*Id.* at 2285 (ellipses and internal quotation marks omitted).

### *The Modified Categorical Approach is Appropriate*

The parties agree that one of Mr. Wright's prior convictions qualifies as a controlled substance offense. The dispute is whether another conviction, under Minn. Stat. § 152.023, subd. 1(1) (1997), qualifies as the second conviction for career-offender sentencing. Section 152.023 provides in subdivision 1: "A person is guilty of controlled substance crime in the third degree if: (1) the person unlawfully sells one or more mixtures containing a narcotic drug." The term "sell" is defined in another statute, Minn. Stat. § 152.01, subd. 15a (1997), as "(1) to sell, give away, barter, deliver, exchange, distribute or dispose of to another, or to manufacture; or (2) to offer or agree to perform an act listed in clause (1); or (3) to possess with intent to perform an act listed in clause (1)."

- 4 -

Mr. Wright argues that Minnesota's definition of "sell" allows a conviction under § 152.023, subd. 1(1) for offering to sell, which is beyond the scope of a "controlled substance offense" as defined by § 4B1.2(b). Accordingly, he asserts that a conviction under § 152.023, subd. 1(1) is broader than the definition of a controlled substance offense under the Guidelines. He argues that under *Descamps*, the statute is not divisible and the modified categorical approach is inappropriate because the court should look only to the statute of conviction, not a separate definitional statute. He states that the district court should have applied the categorical approach and declared that the § 152.023, subd. 1(1) conviction does not constitute a controlled substance offense for purposes of § 4B1.1.

The government concedes that if the categorical approach applies, the conviction is not a controlled substance offense because the crime of offering to sell drugs is outside § 4B1.2(b)'s definition. It argues, however, that the modified categorical approach is appropriate because one cannot interpret § 152.023, subd. 1(1) without referring to Minnesota's definition of "sell," which sets forth alternative elements. It contends that the statute of conviction is appropriately considered to be divisible, even though "sell" is defined in a separate statute.

In light of the government's concession, we assume without deciding that a conviction under § 152.023, subd. 1(1) may be for conduct commensurate with a controlled substance offense under § 4B1.2(b), or for conduct beyond § 4B1.2(b)'s definition. We proceed to determine whether *Descamps* forecloses the use of the

- 5 -

modified categorical approach when a term in the statute of conviction is defined in a separate statute.

Before *Descamps*, this court approved the use of the modified categorical approach in such circumstances. *See United States v. Ventura-Perez*, 666 F.3d 670, 676 (10th Cir. 2012). In *Ventura-Perez*, the issue was whether the defendant's Texas burglary conviction was a crime of violence for purposes of U.S.S.G. § 2L1.2. 666 F.3d at 671. The statute required entry into a "habitation," and "habitation" was defined in a separate statute as "a structure or vehicle that is adapted for the overnight accommodation of persons," including appurtenant structures. *Id.* at 672-73 (internal quotation marks omitted). The defendant argued that the inclusion of appurtenant structures took the crime beyond the elements of generic burglary, and therefore the conviction was not a crime of violence. *Id.* at 674. This court stated that even adopting the defendant's view,

> the modified categorical approach would permit the government to show that a defendant's prior conviction was for the burglary of a structure that is adapted for the overnight accommodation of persons and hence a crime of violence. The government would merely be establishing the statutory phrase that covered the prior conviction. *It is irrelevant that here the statutory phrase is in a definition section of the state penal code, rather than in a section stating a criminal offense.* The definition language is incorporated into the offense section. The crime would be identical if the definition had been inserted into the offense section.

*Id.* at 676 (emphasis added) (alterations, citations, and internal quotation marks omitted).

As the government asserts, and Mr. Wright also recognizes, *Descamps* did not involve a term defined in a separate statute. Because *Descamps* is distinguishable on that ground, we do not conclude that it has abrogated this portion of *Ventura-Perez*. *See also United States v. Castleman*, 134 S. Ct. 1405, 1413-14 (2014) (applying modified categorical approach to Tennessee conviction where the statute of conviction explicitly cross-referenced another statute to define assault, and the definition statute listed three types of assault).

We next must determine whether § 152.023, subd. 1(1), as read in light of § 152.01, subd. 15a, is a divisible statute. *Descamps* states that a statute is divisible if it "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile." 133 S. Ct. at 2281; *see also id.* at 2284 (describing a divisible statute as "compris[ing] multiple, alternative versions of the crime"). An element of § 152.023, subd. 1(1) is to "sell." In turn, § 152.01, subd. 15a defines "sell" in the alternative; under *Ventura-Perez*, that definition is read into § 152.023, subd. 1(1). Using *Descamps*' analogy, this is a situation more akin to a statute that criminalizes assault with any of eight specified weapons (divisible), than to a statute that criminalizes assault with an unspecified "weapon" (indivisible). *See Descamps*, 133 S. Ct. at 2290. Accordingly, the conviction at issue involves a divisible statute, with some portions that correspond to the definition of a "controlled substance offense," but at least one that does not. Under these circumstances, the district court did not err in employing the modified

- 7 -

categorical approach to determine the portion of the statute to which Mr. Wright pleaded guilty.

### *The Court Considered Appropriate Documents*

Under *Shepard*, in employing the modified categorical approach to a prior conviction resulting from a guilty plea, a court may consider "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." 544 U.S. at 26. The purpose of the inquiry is to determine the elements of a crime ("which of the statutory offenses (generic or non-generic) formed the basis of the defendant's conviction," *Descamps*, 133 S. Ct. at 2286), not to identify what the defendant actually did, *see id.* at 2283-86.

Mr. Wright challenges the district court's consideration of all three pages of a Minnesota-state-court document. Viewing the pages as "a unified document, not three separate, free standing, unrelated sheets of paper," R. Vol. II at 54, the district court concluded that Mr. Wright pleaded guilty to clause 1 in § 152.021, subd. 15a— the "sell" or "distribute" clause—not clause 2, the "offer to sell" clause.

The three pages are sequentially numbered. The first page is entitled "Complaint," contains a police officer's description of the facts of the crime, and is signed by the police officer and the prosecuting attorney. Supp. R. Vol. I at 1. The

- 8 -

second page is entitled "Offense" and lists the counts against Mr. Wright.  *Id.* at 2.

The relevant count (Count 1) states:

> That on or about May 7, 1998, in Hennepin County, Minnesota, DAVID
> EUGENE WRIGHT unlawfully sold, gave away, bartered, delivered,
> exchanged, distributed, disposed of to another, offered to sell, agreed to
> sell, manufactured or possessed with intent to sell one or more mixtures
> containing a narcotic drug, to-wit: cocaine.

*Id.* at 2.  The third page contains sections entitled "Finding of Probable Cause,"

"Summons," "Warrant," and "Order of Detention" and contains a judge's signature.

*Id.* at 3.

Because Count 1 includes every definition of "sell," there is not enough

information on the second page to identify the clause to which Mr. Wright pleaded

guilty.  It is only by reading the first page that it becomes evident that he pleaded

guilty to and was convicted under clause 1, not clause 2.

Mr. Wright alleges that it was error for the district court to consider the first

page because it is a police report or complaint application, which cannot be

considered under *Shepard*.  *See Shepard*, 544 U.S. at 16, 21-23.  He asserts that the

district court was limited to reviewing the charging information on the second page

of the document.  The government responds that under Minnesota law, the complaint

*is* the charging document, and therefore the entire document can be considered under

*Shepard*.  *See id.* at 16, 26.

Both parties rely on *United States v. Rosas-Pulido*, 526 F.3d 829 (5th Cir.

2008), in which the Fifth Circuit discussed a similar multi-page Minnesota document.

- 9 -

That court acknowledged that, under Minnesota law, "a complaint written by a police officer can be the charging document." *Id.* at 832. Discussing the different sections of the document, the court then stated:

> A factual account, which would commonly be considered a 'police report,' is contained in a complaint but is not evidence that can be considered at trial, and *courts should not consider it in determining the nature of a prior conviction*. We may, however, consider the Counts stated in the complaint to determine the offense with which the defendant was charged.

*Id.* (emphasis added) (footnote omitted). Following a comment that "the complaint's lengthy narrative of facts . . . is the equivalent of a 'police report,'" the court then examined the counts that were set forth. *Id.* at 832-33. In conclusion, it stated, "[a]t the end of the complaint, there is a signature of the officer making the complaint, and there is a signature beneath a heading stating 'PROSECUTING ATTORNEY'S SIGNATURE.' This document is the charging instrument under Minnesota law, and the district court did not err in considering it." *Id.* at 833. But in light of all of this discussion, it is unclear ultimately what the court meant by "[t]his document." Given the earlier discussion disapproving of considering the probable-cause portion, the court may have meant "[t]his document" to mean the later-discussed portions, the pages containing the counts and the prosecutor's signature. The ambiguity makes *Rosas-Pulido* of limited assistance.

We are more persuaded by the government's argument that the entire three-page complaint document *is* the charging document under Minnesota law, and

- 10 -

therefore it can be considered under *Shepard*. *Cf. Garcia v. Att'y Gen.*, 462 F.3d 287, 292 (3d Cir. 2006) (considering Pennsylvania criminal complaint; "It is the charging instrument, and in this case bears the imprimatur of the district attorney. The filing of a criminal complaint is sufficient to initiate criminal proceedings in the Commonwealth . . . .").

Minnesota Rule of Criminal Procedure 1.06, subd. 1(1), defines a "charging document" as "a complaint, indictment, citation, or tab charge." *See also* Minn. R. Crim. P. 17.01, subd. 1 (providing that any offense other than one punishable by life imprisonment "may be prosecuted by indictment or by a complaint as provided by Rule 2"). In turn, Minn. R. Crim. P. 2.01, subd. 1 defines "complaint" as "a written signed statement of the facts establishing probable cause to believe that the charged offense has been committed. . . . The complaint must specify the offense charged, the statute allegedly violated, and the maximum penalty." This rule indicates that the entire three-page document, including the probable-cause statement, is the "complaint" under Minnesota practice. And the commentary to Rule 2 confirms the impression that the probable-cause statement is an integral part of the complaint: "Even if affidavits, testimony, or other reports supplement the complaint, the *complaint must still include a statement of the facts establishing probable cause*." Comment-Minn. R. Crim. P. 2, para. 2 (emphasis added).

Further, Minn. R. Crim. P. 17.02 addresses both complaints and indictments. The commentary to Rule 17 observes that "[t]he complaint under Rule 2.01 and the

- 11 -

indictment under Rule 17.02, subd. 2 must contain a written statement of the essential facts constituting the offense charged." Comment-Minn. R. Crim. P. 17, para. 1. It continues: "The statement of the evidence, supporting affidavits, or sworn testimony, showing probable cause required by Rule 2.01 *are not a part of the indictment.*" *Id.* (emphasis added). By specifying that the statement of the evidence is not part of an indictment, while remaining silent about whether it is part of a complaint, the commentary tends to indicate that the statement of the evidence *is* part of the complaint.

*Shepard* allows a court to review, among other documents, the "terms of the charging document." 544 U.S. at 26. Because in Minnesota a complaint is a charging document, and the probable-cause statement is a part of the complaint, we hold that the district court did not err in considering all three pages of the complaint.

### *Conclusion*

The judgment of the district court is affirmed.

Entered for the Court


Bobby R. Baldock
Circuit Judge